J-A04023-18

2018 PA Super 176

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BRIAN G. SMETANA | : | |
| | : | No. 894 MDA 2017 |
| Appellant | | |

Appeal from the Order Entered April 24, 2017
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s):  CP-38-CR-0001421-2014

BEFORE:    STABILE, J., NICHOLS, J., and RANSOM, J.[*]

OPINION BY NICHOLS, J.:                          **FILED JUNE 21, 2018**

Appellant Brian G. Smetana appeals from the order holding him in contempt and sending him to prison for failure to pay court-ordered fines and costs.  Appellant contends that the trial court erred by imprisoning him without rendering findings of fact that he had the financial ability to pay the fine and costs and that he willfully refused to pay.  Because the trial court erred, we vacate the order below and remand for a new hearing.

On December 10, 2014, Appellant entered a negotiated plea of guilty to loitering, public drunkenness, trespass, and disorderly conduct.  In relevant part, the court ordered Appellant to pay $600 in fines and $1,129 in costs.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Appellant made some payments, but presently owes a combined total of $928.50.

Because Appellant fell behind on his payments, the court scheduled a contempt hearing for March 27, 2017. But Appellant failed to appear, and so the court issued a bench warrant.

Appellant was arrested and appeared at an April 5, 2017 bench warrant hearing. At the hearing, the trial court asked Appellant why he stopped paying the fines and costs. N.T. Bench Warrant Hr'g, 4/5/17, at 3. Appellant explained that he was not working, was evicted and had to find another place to live, and had a drug habit. *Id.* at 3-4. The court imposed a $500 cash bail and scheduled a contempt hearing for April 24, 2017. *Id.* at 4. The court advised Appellant that for the contempt hearing, he had a right to be represented by counsel. *Id.* Because he did not pay bail, Appellant remained in prison. N.T. Contempt Hr'g, 4/24/17, at 2. On April 12, 2017, the Office of the Public Defender entered its appearance for Appellant.

At the April 24, 2017 contempt hearing, the Commonwealth was represented only by a probation officer from the Lebanon County Collections and Disbursement Unit, and Appellant was represented by a public defender. We reproduce the entirety of the hearing after the court swore Appellant under oath:

> [Probation officer]: Your Honor, this was the first bench warrant that was issued for [Appellant]. His payment plans were set at a hundred dollars a month. He was picked up on the warrant that was issued March 27th. Bail was set at five hundred dollars,

obviously not paid and he is eight hundred and sixty dollars past due your Honor.

[The court]: Counsel?

[Appellant's counsel]: Thank you, your Honor. On behalf of [Appellant], he doesn't have any money to pay today. Nor did anyone bring him any money. This is the first time he's been late. The last time he paid was a few months ago.

[The court]: What do you mean by a few months ago? Define a few. 8/24/2016 - the last payment we received.

[Appellant]: So that's seven months.

[The court]: I believe, let's see. How about September, October, November, December, January, February, March - one, two, three, four, five, six, seven. Yep, at least seven. At least seven. So a few is one or two. Seven is another number. Okay.

[Appellant's counsel]: He does have employment waiting for him through Al Merce [sic] it's a situation where he flips homes. He's willing to do a wage attachment he would need...

[The court]: Well, I'll give him work release...

[Appellant's counsel]: Okay.

[The court]: But does anybody, do you have any money?

[Appellant]: Not as of today, my sister couldn't get off work...

[The court]: Well, if you called your sister, how much can you get me?

[Appellant]: I could get two hundred dollars.

[The court]: There you go. The Court finds [Appellant] in contempt and directs he be incarcerated in the Lebanon County Correctional Facility for a period of thirty days. He may purge himself of this contempt by paying two hundred dollars on the arrears and paying the previously imposed support order [of $100 per month] as directed. The Court has no objection to immediate work release.

[Probation officer]: Your Honor, would you be opposed to time credit from April 5 til today?

[The court]: No, I don't. That's fine.

N.T. Contempt Hr'g, 4/24/17, at 2-3 (ellipses in original).

On April 25, 2017, the trial court entered an order holding Appellant in contempt and sentencing him to thirty days' imprisonment with credit for time served and a purge condition of $200. The order did not set forth any legal reasoning, findings of fact, or conclusions of law. Order, 4/25/17.

On May 2, 2017, new counsel entered their appearance for Appellant and filed a petition for a writ of *habeas corpus*. The petition claimed that the trial court's inquiry into Appellant's financial means was inadequate. Appellant's Pet. for Writ of *Habeas Corpus*, 5/2/17, at 4. The petition alleged that the court failed to make any findings that Appellant had the financial resources to pay the fines and costs but willfully failed to do so. ***Id.*** The petition also pointed out that Appellant failed to pay his $500 bail and argued he had no ability to pay the $200 purge condition. ***Id.*** According to Appellant's appellate brief, because Appellant was released on May 4, 2017, he withdrew the petition.[1]

Appellant timely appealed from the April 25, 2017 order on May 22, 2017, and timely filed a court-ordered Pa.R.A.P. 1925(b) statement. The trial

_____

[1] The record, however, does not reflect a formal notice of withdrawal.

court responded with a two-sentence order merely stating that "upon consideration" of Appellant's Rule 1925(b) statement, "we hereby affirm our Order dated April 24, 2017," which was entered on April 25, 2017. Order, 8/1/17.[2] The second sentence of the court's order instructed the clerk of courts to transmit the record to this Court. *Id.*

Appellant raises the following issues:

1. Did the trial court err by holding [Appellant] in civil contempt for failure to pay his court fines and costs and incarcerating him without inquiring into his ability to pay?

2. Did the trial court abuse its discretion by holding [Appellant] in contempt when the evidence on the record demonstrated that he was unable to pay?

3. Did the trial court abuse its discretion by setting a dollar amount by which [Appellant] could purge his contempt and be released from incarceration without finding beyond a reasonable doubt that [Appellant] had the present ability to comply with the Court's order and meet that purge condition?

4. Did the trial court err by placing [Appellant] on a payment plan without inquiring into his financial circumstances and determining

_____

[2] The trial court's order does not comply with Pa.R.A.P. 1925(a), which states:

the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall forthwith file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or shall specify in writing the place in the record where such reasons may be found.

Pa.R.A.P. 1925(a)(1).

that the ordered payment was within his means and did not unreasonably impose a financial hardship?

Appellant's Brief at 5.[3]

In support of his first issue, Appellant argues that the trial court erred by not ascertaining whether he had the financial resources to pay the fines and costs. Appellant's Brief at 12. The trial court's inquiry into whether Appellant brought any money with him, Appellant maintains, is wholly insufficient. *Id.* at 13. In support, Appellant cites Pennsylvania Rule of Criminal Procedure 706 and 42 Pa.C.S. § 9730(b)(2). Appellant notes that although the court failed to inquire into his financial status, his then-counsel stated that he had no money that day and no other person brought money on his behalf. *Id.* at 16. He asserts that the court's inquiry into whether he could borrow money from his sister is improper because the key question is whether he could pay and not whether he knew his family and friends had financial resources. *Id.*

The Commonwealth initially agrees that this is a civil contempt proceeding. The Commonwealth, however, posits that Rule 706 and pertinent caselaw provide guidance "on how to determine whether a defendant is willfully refusing pay their fines and costs." Commonwealth's Brief at 7. The

_____

[3] The Pennsylvania Association of Criminal Defense Lawyers and Pennsylvania Legal Aid Network have filed an *amicus* brief raising arguments in support of Appellant.

Commonwealth references testimony from the bench warrant and contempt hearings and asserts that the trial court did not abuse its discretion by concluding Appellant had some ability to pay his fines and cost but intentionally did not. *Id.* at 7-8.[4] We hold Appellant has demonstrated entitlement to relief.

The standard of review for an order finding a party in contempt is an abuse of discretion. ***Commonwealth v. Bowden***, 838 A.2d 740, 761 (Pa. 2003). "Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied[.]" *Id.* at 762 (citations omitted).

By way of background, Section 9728 of the Sentencing Code discusses the collection of fines and costs:

> (1) Except as provided in subsection (b)(5),[5] all restitution, reparation, fees, costs, fines and penalties shall be collected by the county probation department or other agent designated by the county commissioners of the county with the approval of the president judge of the county for that purpose in any manner provided by law. However, such restitution, reparation, fees, costs, fines and penalties are part of a criminal action or proceeding and shall not be deemed debts.

42 Pa.C.S. § 9728(a)(1).

---

[4] The Commonwealth does not argue that Appellant waived his issue for failure to raise it to the trial court.

[5] This subsection addresses deductions from an offender's personal financial account with the Department of Corrections and is not pertinent here. ***See generally*** 42 Pa.C.S. § 9728(b)(5).

Section 9730, in turn, sets forth the procedures for a failure to pay:

**(b) Procedures regarding default.—**

(1) If a defendant defaults in the payment of a fine, court costs or restitution after imposition of sentence, the issuing authority or a senior judge or senior magisterial district judge appointed by the president judge for the purposes of this section may conduct a hearing to determine whether the defendant is financially able to pay.

(2) If the issuing authority, senior judge or senior magisterial district judge determines that the defendant is financially able to pay the fine or costs, the issuing authority, senior judge or senior magisterial district judge may turn the delinquent account over to a private collection agency or impose imprisonment for nonpayment, as provided by law.

(3) If the issuing authority, senior judge or senior magisterial district judge determines that the defendant is without the financial means to pay the fine or costs immediately or in a single remittance, the issuing authority, senior judge or senior magisterial district judge may provide for payment in installments. . . .

(4) A decision of the issuing authority, senior judge or senior magisterial district judge under paragraph (2) or (3) is subject to section 5105 (relating to right to appellate review).

42 Pa.C.S. § 9730(b)(1)-(3).[6]

---

[6] The Pennsylvania Supreme Court has apparently construed the statute as requiring a hearing. ***Buck v. Beard***, 879 A.2d 157, 161 (Pa. 2005) (noting that "pursuant to Section 9730(b) of the Sentencing Code, when a defendant is in default, the court of common pleas conducts a hearing to determine the defendant's ability to pay, and then may order an appropriate payment plan. Section 9730(b) directs the court to consider the defendant's financial resources").

The Pennsylvania Commonwealth Court has explained the procedure for

imprisoning a defaulting offender as follows:

> **Before an offender can be confined solely for nonpayment of financial obligations he or she must be given an opportunity to establish inability to pay.** If the offender establishes indigence, he or she will be allowed to make payments in reasonable installments. Thus, if an offender defaults in the payment of a fine or court costs after imposition of sentence, the fines and costs court may conduct a hearing to ascertain information regarding an offender's financial resources. 42 Pa.C.S. § 9730(b)(1). If the fines and costs court determines the offender is able to pay fines or costs, it may turn the delinquent account over to a private collection agency or impose imprisonment for nonpayment, as provided by law. 42 Pa.C.S. § 9730(b)(2).
>
> Imprisonment for nonpayment of financial obligations may [also] be imposed on a finding of contempt for failure to pay a fine, 42 Pa.C.S. § 9772,[7] on a finding of contempt for failure to make restitution, 18 Pa.C.S. § 1106,[8] or on a finding of violation of a specific condition of supervision. 42 Pa.C.S. § 9773. Each proceeding requires a hearing.

*George v. Beard*, 824 A.2d 393, 396 (Pa. Cmwlth. 2003) (emphasis added

and some citations omitted).

> If . . . failure to pay sentenced financial obligations exposes an offender to initial confinement, additional confinement or

---

[7] In relevant part, Section 9772 states, "[u]nless there is proof that failure to pay a fine or that portion of the fine that is due is excusable, the court may after a hearing find the defendant guilty of contempt and sentence him to not more than six months imprisonment, if a term of confinement of that amount could have been imposed for the offense charged." 42 Pa.C.S. § 9772.

[8] Section 1106(f), in pertinent part, states "[u]pon such notice of failure to make restitution, or upon receipt of the contempt decision from a magisterial district judge, the court shall order a hearing to determine if the offender is in contempt of court or has violated his probation or parole." 18 Pa.C.S. § 1106(f).

increased conditions of supervision, a hearing is warranted. Stated differently, if an offender is notified that he or she is charged with contempt or with probation or parole violations as a result of failure to pay fines, costs or restitution, the offender should be afforded a hearing.

*Id.*

Pennsylvania Criminal Rule of Procedure 706 similarly bars imprisonment unless the court conducts a hearing and ascertains that the defendant has the financial ability to pay:

(A) A court shall not commit the defendant to prison for failure to pay a fine or costs unless it appears after hearing that the defendant is financially able to pay the fine or costs.

(B) When the court determines, after hearing, that the defendant is without the financial means to pay the fine or costs immediately or in a single remittance, the court may provide for payment of the fines or costs in such installments and over such period of time as it deems to be just and practicable, taking into account the financial resources of the defendant and the nature of the burden its payments will impose . . . .

(C) The court, in determining the amount and method of payment of a fine or costs shall, insofar as is just and practicable, consider the burden upon the defendant by reason of the defendant's financial means, including the defendant's ability to make restitution or reparations.

Pa.R.Crim.P. 706.[9]

Initially, we acknowledge that the trial court did not specify the particular framework it was proceeding under, *e.g.*, 42 Pa.C.S. § 9730, 42

---

[9] This rule of criminal procedure would seem to suggest that contempt from a failure to pay court-ordered fines and costs would be criminal in nature.

Pa.C.S. § 9772, or Pa.R.Crim.P. 706. The court's lack of specificity, however, does not inhibit our review because prior to imprisoning a contemnor for failure to pay court-ordered fines or costs, the trial court must render findings of fact as to the contemnor's financial resources. **See** 42 Pa.C.S. § 9730 (stating imprisonment for nonpayment must be pursuant to law); 42 Pa.C.S. § 9772 (explaining imprisonment for nonpayment must occur after a hearing and a determination that the defendant's failure to pay was not excusable); Pa.R.Crim.P. 706 (specifying that a court shall not imprison without a hearing and a finding that the defendant had a financial ability to pay).

Here, the trial court failed to make any findings of fact on Appellant's ability to pay prior to imprisoning him. **See** 42 Pa.C.S. § 9730(b)(2); 42 Pa.C.S. § 9772; Pa.R.Crim.P. 706. Although Appellant indicated that he could potentially borrow money from a sibling, the court failed to find—as our law requires—that he alone had the financial ability to pay the outstanding fines and costs such that imprisonment was warranted. Order, 4/25/17; **see** 42 Pa.C.S. § 9730(b)(2) (mandating that the court must determine "that the **defendant** is financially able to pay the fine or costs" before imprisoning defendant for nonpayment as provided by law (emphasis added)); 42 Pa.C.S. § 9772 (providing that a court cannot hold a defendant in contempt and imprison defendant unless there is proof that the failure to pay fine was not excusable); Pa.R.Crim.P. 706 (stating that unless a defendant is financially able, the court "shall not" imprison a defendant for failure to pay fines or

costs). We acknowledge that Section 9730 does not define "defendant" but a common-sense definition of the term would exclude the defendant's family and friends. ***See Commonwealth v. Melvin***, 103 A.3d 1, 24 (Pa. Super. 2014) ("Absent a definition in the statute, statutes are presumed to employ words in their popular and plain everyday sense, and the popular meaning of such words must prevail." (citation omitted)). And a common sense definition of defendant is a "person . . . accused in a criminal proceeding." Black's Law Dictionary 482 (9th ed. 2009). By imprisoning Appellant without the required findings of fact on his financial resources, the court failed to apply the law properly.[10] ***See Bowden***, 838 A.2d at 762. Thus, we vacate the order below and remand for a hearing on Appellant's financial means to pay the court-ordered fines and costs and whether Appellant willfully failed to pay. The court must make the appropriate findings of fact. In light of the foregoing, we vacate the payment plan.

Order vacated. Case remanded for further proceedings. Jurisdiction relinquished.

---

[10] We note that the National Task Force on Fines, Fees and Bail Practices has drafted a useful summary articulating the procedure for collecting court-imposed fines and costs. Nat'l Task Force on Fines, Fees and Bail Practices, *Lawful Collection of Legal Financial Obligations* (2017), http://www.ncsc.org/~/media/Images/Topics/Fines%20Fees/BenchCard_FINAL_Feb2_2017.ashx. Page two of this document refers to a document titled, *Best Practices for Determining the Right to Counsel in Legal Financial Obligation Cases*, which has not yet been released.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>06/21/2018</u>